UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DEREK RASHON AGUILAR,

Plaintiff,

v.

WINN, MILLIGAN, HARRIS, ARNOLD,

Defendants.

CAUSE NO. 3:25-CV-288-JD-JEM

OPINION AND ORDER

Derek Rashon Aguilar, a prisoner without a lawyer, filed an amended complaint. ECF 8. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Aguilar, who is currently incarcerated at the Wabash Valley Correctional Facility, alleges he was subjected to excessive force while at the Indiana State Prison (ISP). He was concerned about his mental health on the day he was released from segregation to the general population dorm at ISP, so he approached Officer Milligan and Officer Harris for assistance. Instead of helping him, the officers took him to a stairwell with no cameras and ordered him to cuff up. He put his hands up in the air "in a non-

threatening way to comply with the order." ECF 8 at 2. Officer Milligan then "placed his forearm under Mr. Aguilar's chin and attempt[ed] to place him in a chokehold." *Id*. Mr. Aguilar claims he became scared, so he "rush[ed] out the Rec Room to were (sic) the pool tables are trying to tell both officers to call a Sgt." *Id*. A Signal 7 was called, and Mr. Aguilar calmed down and placed his hands in the air. He was handcuffed by the officers and "slammed to the ground by Ofc. Milligan & Lt. Winn for no reason at all because he was cuffed & complying with all orders." *Id*. His head hit the ground, and he was knocked unconscious. He regained consciousness to find Lt. Winn, Sgt. Arnold, Officer Harris, and Officer Milligan "punching him over & over in his face and head to the point Mr. Aguilar [was] seeing stars and fear[ed] he's going to die because he is still cuffed up and can't protect himself." *Id*. at 3. Sgt. Arnold then began tasering Aguilar, who managed to slip out of his handcuffs "to try to protect his head from the blows." *Id*. The officers accused him of hitting Lt. Winn when he raised his hand to protect his head, but Aguilar insists he didn't do it intentionally. Sgt. Arnold and Lt. Winn told Aguilar he was "gonna die now just like George Floyd did." *Id*. He was beaten in the head by all four officers and knocked unconscious again. The officers secured Aguilar in handcuffs and shackles, carried him outside, dropped him on his face, and then placed him in the van where they continued to beat him in the face, body, and head. They proceeded to take Aguilar to a "torture cell called SMC2" for five days. *Id*.

According to Aguilar, Officer Adams was "in control of these torture cells." *Id*. During those five days, Officer Adams refused to give him a mattress, a blanket, a Bible, a pen, utensils, a toothbrush/toothpaste, or soap while he was there, refused him any

2

medical care, and refused him water "for hours at a time" as punishment. *Id*. at 4. The lights were kept on for twenty-four hours a day. Aguilar says he suffers from headaches and nightmares as a result of these incidents. He has sued Lt. Winn, Sgt. Arnold, Officer Harris, Officer Milligan, and Officer Adams for monetary damages. He also asks that each defendant be fired.

The Eighth Amendment prohibits cruel and unusual punishment—including the application of excessive force—against prisoners convicted of crimes. *McCottrell v. White*, 933 F.3d 651, 662 (7th Cir. 2019). The "core requirement" of an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (quotations and citation omitted). Deference is given to prison officials when the use of force involves security measures taken to quell a disturbance because "significant risks to the safety of inmates and prison staff" can be involved. *McCottrell*, 933 F.3d at 663 (quoting *Whitley v. Albers*, 475 U.S. 312, 320 (1986)). Jails are dangerous places, and security officials are tasked with the difficult job of preserving order and discipline among inmates. *Lewis v. Downey*, 581 F.3d 467, 476 (7th Cir. 2009). It is important that prisoners follow orders given by guards. *Id*. at 476-77 (citing *Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984)). To compel compliance—especially in situations where officers or other inmates are faced with threats, disruption, or aggression—the use of summary physical force can be warranted. *Id*. at 477 (citing *Hickey v. Reeder*, 12 F.3d 754, 759 (8th Cir. 1993)). That is not to say, however, that such justification exists "every time an inmate is slow to comply with an order." *Lewis*, 581 F.3d at 477. Several factors are

3

explored when determining whether an officer's use of force was malicious or legitimate, including the need for applying the force, the threat posed to the safety of staff and inmates, the amount of force used, and the extent of the prisoner's injury. *Hendrickson*, 589 F.3d at 890.

Here, Aguilar alleges he was slammed to the ground, punched repeatedly in the head, tasered, beaten, and purposefully dropped by Lt. Winn, Sgt. Arnold, Officer Harris, and Officer Milligan during an encounter at ISP in late March of 2023. He lost consciousness and suffered pain and headaches as a result. While some of Aguilar's allegations—such as running away from the officers and slipping out of his handcuffs—suggest he was non-compliant at times during the encounter, the court must accept the allegations in the complaint as true and take him at his word that he was not displaying threatening/aggressive behavior or resisting orders when the incidents of force described above occurred. *See e.g., Lewis*, 581 F.3d at 477. Although further investigation may reveal the force used was legitimate under the circumstances, at this preliminary stage—and giving Aguilar the benefit of the inferences to which he is entitled—he has stated plausible Eighth Amendment excessive force claims against the four officers.

Aguilar also alleges he was sent to a "torture cell" directly after the encounter as continued punishment. The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citations omitted). The Seventh Circuit has "interpreted this general statement as a requirement that prisons provide inmates with reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities." *Hardeman v.*

4

*Curran*, 933 F.3d 816, 820 (7th Cir. 2019) (internal quotation marks and citation omitted). An official can violate the Constitution if he or she exhibits deliberate indifference to conditions that may seriously harm an inmate. *Thomas v. Blackard*, 2 F.4th 716, 719 (7th Cir. 2021). Deliberate indifference encompasses both objective and subjective components:

> A prisoner challenging conditions of confinement must first show that the conditions were sufficiently serious as an objective matter, meaning that they denied the inmate the minimal civilized measure of life's necessities, creating an excessive risk to the inmate's health and safety. Second, in covering the subjective component of the inquiry, the inmate must prove that prison officials acted with deliberate indifference—that they knew of and disregarded this excessive risk of harm to the inmate.

*Thomas*, 2 F.4th at 719–20 (internal quotation marks, citations, and brackets omitted). Put another way, an inmate can state a viable claim for deliberate indifference if he alleges the defendant "deliberately ignored a prison condition that presented an objectively, sufficiently serious risk of harm." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (citation omitted).

"Generally speaking, challenges to conditions of confinement cannot be aggregated and considered in combination unless 'they have a mutually enforcing effect that produces the deprivation of a single, identifiable need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets.'" *Johnson v. Prentice,* 29 F.4th 895, 904 (7th Cir. 2022) (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)). Allegations of vague "overall conditions" aren't sufficient. *Id*. Regarding state of mind, "[d]eliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something

5

approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee Cty.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate-indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing). "Negligence, or even objective recklessness, is insufficient to satisfy deliberate indifference." *Stockton*, 44 F.4th at 615.

Here, Aguilar alleges Officer Adams refused him bedding and personal/hygiene supplies for the five days he remained in the cell. However, he doesn't describe these allegations in a way that would allow the court to infer they were the kind of "objectively substandard" and "[e]xtreme deprivations [that] are required to make out a conditions-of-confinement claim[.]" *Vasquez v. Frank*, 290 Fed. Appx. 927, 929 (7th Cir. 2008) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)); *Taylor v. Riojas*, 592 U.S. 7, 7–10 (2020) (case remanded for further proceedings when inmate was held for six full days in "shockingly unsanitary cells" including "massive" amounts of feces everywhere, "frigidly cold" temperatures, and a lack of any clothes or bedding which left the inmate to "sleep naked in sewage"); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).") (quotation marks, citations and footnote omitted)).

Aguilar further claims Officer Adams kept the lights on for twenty-four hours a day, but he doesn't describe the lighting situation in any meaningful way. *See Isby v. Brown*, 856 F.3d 508, 518–22 (7th Cir. 2017) (affirming district court's findings about

conditions in segregation including the fact that twenty-four-hour lighting concern was negated because inmate was able to "cover his eyes with clothes or towels"); *Vasquez*, 290 Fed. Appx. at 929 ("24–hour lighting involving a single, 9–watt fluorescent bulb does not objectively constitute an extreme deprivation") (internal quotation marks omitted); *Twombly*, 550 U.S. at 555.

Finally, Aguilar claims Officer Adams turned off the water in his cell for "hours at a time," but he doesn't say how often or for how many total hours the lack of water encompassed. Nor does Aguilar allege he was deprived of other liquids and/or drinks during his mealtimes. He says he had to drink out of the toilet "sometimes," but he doesn't explain why. In any event, Aguilar doesn't have a right to running water in his cell. *See Gills v. Hamilton*, 164 F.4th 640, 645–46 (7th Cir. 2026) (collecting cases in which the Seventh Circuit has consistently held that a cell without a sink or toilet, on its own, doesn't violate the Constitution).

Importantly, Aguilar admits he only remained in the "torture cell" for five days. Based on the allegations in the amended complaint—which describe short-term, temporary issues—the court can't conclude the conditions he was subjected to created an excessive risk to his health or safety. *See, e.g., Johnson*, 29 F.4th at 904 ("frequency, severity, [and] duration of the unsanitary cell conditions" must be considered); *Dixon v. Godinez*, 114 F.3d 640, 643 (7th Cir. 1997) ("[T]he duration of the condition . . . determines whether the conditions of confinement are unconstitutional."); *Stephens v. Cottey*, 145 Fed. Appx. 179, 181 (7th Cir. 2005) ("As is the case under the Due Process Clause, a short-term deprivation is less serious for Eighth Amendment purposes than a

long-term one.") (collecting cases)). Overall, Aguilar's sparse allegations regarding the condition of his cell are insufficient to state a claim against Officer Adams. "[A] plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original); *see also Twombly*, 550 U.S. at 555.

For these reasons, the court:

(1) GRANTS Derek Rashon Aguilar leave to proceed against Lt. Winn, Sgt. Arnold, Ofc. Harris, and Ofc. Milligan in their individual capacities for compensatory and punitive damages for subjecting him to excessive force at the Indiana State Prison on March 28th, 29th, or 30th, 2023, in violation of the Eighth Amendment;

(2) DISMISSES all other claims;

(3) DISMISSES Ofc. Adams;

(4) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Lt. Winn, Sgt. Arnold, Ofc. Harris, and Ofc. Milligan at the Indiana Department of Correction, with a copy of this order and the amended complaint (ECF 8);

(5) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information;

8

(6) ORDERS, under 42 U.S.C. § 1997e(g)(2), Lt. Winn, Sgt. Arnold, Ofc. Harris, and Ofc. Milligan to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order; and

(7) DENIES the motion for clarification and screening (ECF 14) as moot.

SO ORDERED on June 23, 2026

/s/ JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT

9